versus the Property Tax Appeal Board. Do you want to call the case, please, Perry? Case number 08-3291, consolidated with 08-3292, Calumet Transfer LLC v. Illinois Property Tax Appeal Board. I wonder if all of the lawyers who are going to argue orally would step up for just a moment and identify yourselves for the record, and then I have a question or two about how you want to arrange your argument. Good morning, Your Honor. I'll tell you what my preference is, but I'll give you an opportunity to express yours first. Okay, thank you. My name is Michael Nguyen. I'm appearing on behalf of Calumet Transfer LLC. Okay, Mr. Nguyen. Good morning. Assistant Attorney General Anne Kallstrom on behalf of the Property Tax Appeal Board. Counsel, Anne. Good morning, Your Honor. I'm Marie Smoot, Assistant State's Attorney on behalf of the Cook County Court of Review. Okay, first question I have is have you decided how you want to split your time? We have. I'll be arguing first, and we'll be equally dividing the time. Oh, okay. But you're going to... Well, I'll let you... You've decided already on how you're going to split up the issues I take and what you're going to stress and what you're going to stress? Yes, Your Honor. Okay. You get 15 minutes between you, you know? Okay. And, Mr. Nguyen, have you decided... Do you want to argue these issues separately? I mean, the two defense... You want to argue the two cases separately, or would you follow the court's suggestion that you combine the two? I would combine the two. I mean, if you want to stress issues that are not common to the two cases, you can, of course, do that. Thank you, Your Honor. But I couldn't find any to speak of. Did you? We agreed, so we'll just address this one. Okay. Very good. So we basically... We're addressing both cases at the same time, and you can handle, you know, in terms of how you want to deal with the facts in one and deal with the facts in the other. I'll leave it up to you. Okay. And you can save out from your 15 any portion you wish for a response. Okay. Thanks a lot. Okay. Thank you, folks. Okay, thank you, Your Honor. Again, it's Mike Nguyen on behalf of Calumet Transfer LLC, which is the applicant in this case. This is an appeal of two consolidated cases in which the PTAB ordered no change to the valuation of the Board of Review. We have one principal contention that extends to both cases, and that is that the fact that the sales of the subject properties, which were reviewed by the PTAB, the fact that those sales occurred in a Chapter 11 bankruptcy and were approved by a bankruptcy judge, offered absolutely no legal or factual basis for the Property Tax Appeal Board to give no weight to those sales and to instead proceed to consider other methods of valuation. Did you argue that before the Property Tax Appeal Board? I did not, Your Honor. Mr. Dillon did. Did you argue that issue? That issue was argued before the Property Tax Appeal Board, Your Honor, because the sales were put forward as being the best evidence of value under Illinois law. But then you went ahead and offered comparable evidence, too. Comparable evidence was offered, but even those comparables had bankruptcy sales in them, basically to corroborate that the sale of the purchased property was in the ballpark for those types of sales. But those sales, too, were rejected by the PLJ. So you don't think they made a suggestion that you may have waived this argument about the exclusive... No, Your Honor. We don't think we waived it. In fact, the fact that the Property Tax Appeal Board in its decision had to first deal with whether or not these were acceptable sales is an indication that it had to first deal with whether or not it would give way to the sales, which is the argument we're raising. And then, after deciding that because they were in bankruptcy, it was not going to consider them, it then went on to consider other methods of valuation. So we think the way it decided raises... But in the PTAB order, they specifically mention, in the run-up to their long, long explication of the evidence that was presented to them, they point out that you brought up comparable sales as a basis for your argument. And I didn't see anything specific in there about them saying that you argued that because it was a recent sale, that it was conclusive. I didn't see the word conclusive anywhere. Except in your brief. Well, the cases that support that contention, I believe, were cited in the briefs. But, in any event, the value that was asked for by the taxpayer in the closing argument was the sale price of the property. Right. I understand that part. But if that were your position all along, why would you even bother to offer comparables? Your Honor, I think as a matter of practice, another attorney might have held the comparables to a rebuttal case, but they were introduced in the main case to show that the price being offered for the sale was in the range of other properties in the same area purchased out of bankruptcy. Okay. And what's salient to this case for the issue that we presented for you is that even those sales were rejected solely because they were in bankruptcy. But what you're really suggesting in your brief is I understand your brief. And correct me if I'm misinformed. What you're really suggesting is that once you've established this most recent sale, and even though it were a bankruptcy sale or an auction out of a bankruptcy sale, it was, A, not under duress, and, B, conclusive, so that there was no need for the Property Tax Appeal Board to look at any evidence of comparable sales. That's correct. And they shouldn't have looked at evidence of comparable sales and shouldn't have taken that into consideration. Not in the absence of any evidence put forward by either the board or the attorney. But you did put evidence of comparable sales. But we put evidence. The evidence we put in about the sales met the criteria for establishing this was an arms-length sale, that it was offered to the marketplace, that there was an offer and acceptance process, and that it was a good-faith purchaser. That was put in as a preface for introducing the sale. That isn't the impression that's left from reading the PTAB order. At least that wasn't the impression that was left with me from reading the PTAB order, that you had stressed that the most recent sale, even though in bankruptcy, was conclusive. I mean, they do address the issue of it being in bankruptcy, and there's that one phrase that they use, which you latch onto in your brief and stress rather heavily, that there was absolutely no basis for them to come to the conclusion that they did come to in disregarding that sale as being obviously not conclusive. That's correct. But I didn't see the language of the PTAB order in any way expressing the fact that the argument you make on appeal was the argument that you were stressing before them. Well, for one thing, whatever argument was put before the PTAB, the PTAB has certain obligations, one of which is to accept the sale of the property if it has not been undermined as being that arms-length. That was before it. So even if you disagree as to whether that issue was put forward, PTAB's rationale for how it should decide a case should instruct it based on Illinois case law, but the first thing it looks at is that sale. And then even if it was put into the record by us, by somebody else, it need not go to that other method unless evidence was introduced that impugns the arms-length nature of that sale. So PTAB itself did not follow Illinois law in proceeding to those other sales. But they didn't force you to introduce evidence of comparables. What would have happened, for example, if you had said, as we understand the law arguing now to PTAB, once we establish the most recent sale, it's conclusive. We don't need to offer any comparables, and here is the purchase price, here's the fair market value based on the sale, 800,000 or 850,000, depending on which case you want to argue. And we rest. You didn't do that. No, there was additional evidence introduced. Comparables. What was that introduced for? If the fair market value was conclusive based on the sale, why would you even bother to introduce comparables and muddy the water? Well, because it adds to the credibility of the sale being in the range of those comparables, to the credibility of the sale. But the sale itself, unless it was impugned as being out of your place. I guess I understand your position. Okay. But in your view, they should have never even considered comparables, either from you or from the witness from the Chicago Board of Education. They shouldn't have considered any of that evidence. In the absence of evidence that we would have introduced that impugned the arms of nature, no, they should not have. They should have just considered the sale of the subject property. You didn't impugn your own arm's length by introducing comparables, which could arguably at least call for a different value. No, Your Honor, because, in fact, those. So why introduce them? They were introduced because the credibility of the sale, from a visual standpoint, was better with sales that looked like it. I think I do understand your argument now, and what you're basically vigorously arguing is that in no way did this amount to a waiver of the argument you're making now. No, Your Honor, because the evidence was there for the PTEP, and the PTEP applying its own rules and applying Illinois law on its own. What's your best case for arguing that there should be no suspicion placed on the sale because it came out of bankruptcy? Well, we cited a case from the task force in Indiana, which itself cited cases from three other states. You've got an Illinois case. It is not. It is not, but it cited other cases. You'd like to have an Illinois case, I suspect. I would, but I can cite two cases. But it was a bankruptcy. It was a bankruptcy. What about your PTEP cases, their decisions? Were any of those bankruptcies? They were auction sales. Were any of them a bankruptcy? They were not a bankruptcy, but there was a comparable situation in that there was a sale by a bank after a foreclosure, which is, I think, somewhat analogous to having a trustee in bankruptcy or a debtor in possession. But there's not a single PTEP decision previously that indicated that it bankruptcies. Nothing arising out of a bankruptcy would be an arm's length transaction. Not that we could find. There's also no PTEP decision saying the contrary, that if it comes out of bankruptcy, it's not an arm's length. And, in fact, there's various decisions from PTEP saying an auction sale can be an arm's length, a sale by a bank after foreclosure can be an arm's length. And that should be the presumption. I think that's what you're asking us to decide. Yes, because it is a sale like no other sale. If it meets all the criteria of having been put to the market, gone through an offer and acceptance, and being a good-faith buyer, it is then up to whoever is the opponent to introduce evidence. The argument of an auction sale is really not the same. Don't you agree? I mean, I think there's a big distinction between, you know, putting something on the open market and having an auction sale. Now, I know these decisions say that an auction sale can be an arm's length, but the reason that it's at an auction is sort of it goes without saying, doesn't it? Well, not really, Your Honor. There's been auctions in the best of times when there are too many buyers. There are some things that are held for auction that they're not there because it's a fire sale. It's a method of sale. But what is the Indiana case? The Indiana case is the U.S. Steel case where U.S. Steel itself was not in bankruptcy. And then in order to support its valuation of the property, it introduced comparables of which were sales in bankruptcy. And the Indiana task force held that where there are conditions which indicate that all the comparable sales, the market is basically coming out of bankruptcy, which was the case with the U.S. Steel industry. Well, that's kind of different. You've got a whole bunch of bankruptcy cases that are being used to validate a sale of a non-bankrupt. A non-bankrupt is in the steel industry in the same market. Okay. All right. So if you define the market as coming out of bankruptcy, then all they said was you should disqualify it. What's our standard of review here? How are we looking at this administrative decision? We contend that the PTAB made a narrow law. The reason it made a narrow law, and this is de novo, is because the Illinois law is that if you have a sale. So you're saying absolutely this is de novo, no clearly erroneous? Initially. Initially. We have an alternative argument. But initially, if the sale was not impugned as not being an arm's length, and we established that it was an arm's length sale by the three criteria of being supposed to market and so forth, that is nearly conclusive unless there's evidence that it's not an arm's length and the PTAB should have stopped there as a matter of law because that is a method of valuation. You only proceed to other methods of valuation. Arm's length? Do you think that that's something that could generally be looked at as a question of law? Whether a sale is at arm's length is obviously an analysis of the facts. Just throwing that out generally? No, you're not. I'm not throwing that out generally. What I'm saying is there were no facts introduced to show this was not an arm's length, and we established facts to show that it was a sale like any other sale. The ship would have been accepted. And, therefore, the PTAB made an error of law in proceeding to other methods of valuation if the only reason for discounting it was that it was in bankruptcy. But we have also argued on the manifest way of the evidence that it erred there, too, because it threw out comparables solely on the basis that they were in bankruptcy. And so even if you want to go to the facts, which I'm sure the appellees will want to do, there, too, you can't escape the issue that bankruptcy was the main reason for throwing out the sales. I've used up my time. Thanks a lot. We'll give you an opportunity to respond after we've heard from the Attorney General in the State's Attorney's Office. Thank you. In the two-part defense of PTAB. Good morning, and may it please the Court. Assistant Attorney General Ann Chalstrom on behalf of the Property Tax Appeal Board. To be clear, there is no per se rule, nor does PTAB have a preconceived disposition, that a recent bankruptcy sale or bankruptcy auction sale of a property is inherently not at arm's length, or said another way, that the price resulting from those types of sales automatically does not establish fair market value. Nor did PTAB so clearly. Then why didn't it in this case? It weighed the evidence, Your Honor. When you were questioning about the standard of review, PTAB determined that it gave little weight to these sales because it determined that the arm's length nature of the sales was called into question by evaluating the evidence put before it by the parties in each of the cases. And they determined that factual determination, which is reviewed by this Court, under a manifest weight of the evidence standard. How do you distinguish these four decisions that were cited in the briefing? Right. The PTAB decision here proved PTAB's point. And four out of those five cases where they said those, you're correct, Your Honor, those didn't involve a bankruptcy sale per se, but four were auction sales, and I believe one was a bankruptcy sale. This was an auction sale. Right. Right. Right. It was an auction sale. There was no indication in the auction. How long had this property been prior to the auction? How much time for notification had occurred? On the one case, the one that sold pursuant to the true auction sale. I'm sorry, in the case we're talking about here today. Yes. I believe there was testimony that was on the open market for about a year, 365, 366 days. And then the witness for, the appraisal witness, Enright, I believe, for the Board of Education, said it was, he extrapolated three to four months, advertised as an auction sale. Now in the cases, the prior PTAB cases that Calumet has pointed out on appeal, PTAB indicated in those decisions, and four out of five of them, that there was no evidence or no probative evidence put forth by the opposing party to the taxpayer to refute the taxpayer's evidence of an arm's length transaction, going to show PTAB makes this decision on the evidence presented before it. In one of the cases, PTAB rejected the party's argument that the type of sale alone, without looking at any evidence, should be disregarded as an arm's length sale, solely because of the type of sale. So what PTAB is saying is that sales out of bankruptcy or out of auction are not immediately suspect. They're just not conclusive. What I'm saying is the first part, I agree with what you said the first part, not immediately suspect because we're going to look at what the evidence is before the PTAB as presented by the parties, as determined in the residential real estate and the Bloomington Eastland Mall case from the Fourth District talking about arm's length. Was Calumet required?  Because they had already filed their comparables with PTAB, hadn't they? The process starts with, I don't know that they filed the comparables with their notice of a petition. I think they did. I think they did. I believe, though, going to your question. It's normally how it's done. The comparables are included in the initial written material that is submitted to PTAB. Otherwise, PTAB gets very upset. Going to that, I believe they checked both boxes saying that there was a recent sale. And then they came in and without being asked to, they started introducing their case in chief with comparables, right? Sure. There was testimony on how this sale occurred, and you're right, Your Honor, comparables. And, in fact, I'll just quote the 3291 appeal, which is the blast furnace facility appeal. Richter, their expert, admitted he did not even rely exclusively on the sale price of the property. Well, I thought. But I'm recognizing, too, you know, that those of us who have been through it. Well, that's where this waiver argument has come, it's kind of bubbled to the surface, that this whole argument that the sale was conclusive and should have been treated as such and was not treated as such because it was a bankruptcy sale is their position. Now, whether or not the record really justifies that argument is something we have to decide, I suppose. Right. But I'm trying to tease out of you, if I can, what PTAB's position is with respect to bankruptcy sales. Are they always going to be treated with the kind of language that PTAB used in its orders here? Which would it seem to think that they're immediately going to be suspect for no reason other than the fact that they're bankruptcy sales. Absolutely not. Absolutely not? No. Let me read you something. This is where I think. Well, let's start with this. The PTAB accords little weight to the Board of Review's evidence. For some of us who have a long history with these kinds of cases and everything, that's sort of an amusing remark, but we don't need to go into that because it's not this case. Because no witness was called to provide testimony and be cross-examined. And it lacked analytical components, has limited property data, has limited analysis. So much for the Board of Review, at least in the eyes of PTAB. In addition, and this is the paragraph I'm referring to, which is I think also in the other ruling that they made in the other case, PTAB accords little weight to the sale of the subject in December because of the inaccuracies testified to by both the taxpayer and the appraiser in regard to the inclusion of the outstanding taxes within the sales price. Now, that has nothing to do with bankruptcy yet, right? They're just talking about the fact that as they heard the evidence, and I think they misheard the evidence with respect to taxes, it made things suspicious. But I'm looking for that paragraph where they say they... I'm looking for the magic language, and now I can't find it. But there's some magic language in there about how they concluded that they were going to be dismissive of the bankruptcy sale without ever enumerating anything specific about the bankruptcy sale that made them suspicious. Do you recollect that? That's basically their argument, that they looked with suspicion upon the bankruptcy sale without ever explaining or putting in the record why they were suspicious of it. In that one paragraph. Yeah. But there was evidence presented by both sides. So that's your argument is if you traverse the entire record, there is support for their ruling. And, you know, the PTAB also laid out facts, you know, for the first so many pages of its decision. But, yes, the evidence is in the record. If there is an issue with regard to how the PTAB wrote its decision, I mean, I think these were very thorough, comprehensive decisions, but our position is this, and we want to make it clear that, no, there is not a preconceived position or a per se rule. There is not a per se rule establishing because this type of sale occurs, nor, as demonstrated by these prior decisions, has PTAB operated in that way. I'd like to for a minute address. Before you do that, I have a question for you. Yes. In these hard economic times, is PTAB giving a message that maybe people shouldn't buy things at bankruptcy sales because it's going to be frowned upon? Is that the kind of message they're giving to the community? No, PTAB is giving no message. They determine their cases on a case-by-case basis on the evidence presented before them. Well, you know, that's easy to say. I've been hearing judges say that my whole life, people in judiciary positions, whether it be quasi or not. It seems that maybe they're giving the wrong message as far as I'm concerned. To me, and I'll be clear on the PTAB's position, they decided the two cases before them. There's no administrative regulation or rule that PTAB has enacted with regard to bankruptcy sales. There's nothing in the property tax code, as maybe had in other states, where fair market value, fair cash value is determined by this, and by the way, we're going to exclude you from considering bankruptcy sales. There's nothing like that in Illinois, and that's why it's case-by-case determination. And I don't think by deciding these two cases before it, that PTAB was in essence perhaps what you're trying to get at, perhaps a policy-making decision or something like that. They merely decided the two cases before them as it stood by the evidence presented. Well, if I was a lawyer advising a client and I saw what happened here, I'd be very reluctant to have my client buy something on a bankruptcy sale when they don't know what the tax bill is. Go ahead. Proceed with your argument. I would like to make a point that came up in the appellant's argument, also addressed I believe by Justice McBride, the Lake County Assessor case out of Indiana. Again, an Indiana case, and I'll point out, raised for the first time in the reply brief by the appellant. I'll go to the merits of that case. And I don't have a page number, but the language in that case is, and the point that is being used for that case is that bankruptcy is the norm in these type of industries, and so that's how things should proceed. That's what the appellant's argument is. Well, they do have a point, don't they? I think part of their point came out of, Well, they were somewhat miffed by the fact that one of the cases you claimed to be supporting of your position dates to the 20s. What was unreasonable about their pointing out that the economic climate led to large financial losses and bankruptcies among steelmaking companies in general? Furthermore, between 2001 and 2004, five of the seven integrated steel companies in the United States filed for bankruptcy protection. Quite simply, bankruptcy was the industry norm, not the exception. What was unreasonable or factually incorrect or really anything wrong with that statement? I think we just hit on it, factually incorrect. In that case, the appellate court noted there was extensive and uncontradicted evidence by the taxpayer that bankruptcy was the norm for that industry and so should be a reliable indicator of value. There was no such evidence presented in these two cases before the PTAB. Again, going back, this is an evidentiary question. No, I was asking you about what the court said in the Indiana case. You're saying that was incorrect. No, no, no. I'm saying that goes to our point that it was in the Indiana case, I think a few pages before that, the court made a note that there was extensive and uncontradicted evidence presented that bankruptcy is the norm. There was no such evidence presented in the cases that are on appeal here today. I'm saying that that perfectly supports the position that it's a factual evidentiary question and should Calumet have wanted to make that argument or evidence, they could have done that before PTAB. They didn't do it in their, not to mention, the appellate brief and on reply. I'm not questioning that court's judgment in the Indiana case. I'm merely pointing out that that was extensive and uncontradicted evidence that came in through that case. The court has no further questions. Just one. The only thing I could find different about the two cases was that in one case, the purchase price included assumption of an obligation for back taxes, and in the other case it did not. Yet PTAB stressed in their analysis of both cases that there was some question raised by whether or not the fair market value might have been impacted by the fact that there were back taxes involved. And yet they were two starkly different issues, and it didn't seem to me from reading the two PTAB rulings that they made a distinction between the two cases. Do you know whether they did or not? I can only say what the evidence was in each case with regard to that, and in one of the cases I know there was some confusion on the part of the taxpayer. I don't think there was any confusion. There wasn't any confusion except perhaps in the way the PTAB order was drafted. I didn't find the testimony confusing with respect to the obligations that were in one case assumed and in the other case not assumed. I'll point out in one case, and I can't remember exactly which one it was, although it may have been the 91, that the expert, Richter, wasn't sure if the taxes were included in the purchase price or not. That got cleared up later, though, didn't it? Not with regard to him. Well, I know. With regard to the sale. But the documentary evidence eventually cleared it up, and that documentary evidence was before PTAB, wasn't it? Should have been. I think it was. So it wouldn't have made any difference if the expert witness misspoke. I don't imagine. Would it? Well, as he determined the market value. All right. If he didn't know. Anything else for this lawyer? Thank you, Counsel. Thank you. I'll ask that the Court affirm the PTAB. Thank you. Here comes the other barrel of the shotgun. Your Honor, in response to the question you just asked the Assistant Attorney General, it was in the blast furnace facility that you indicated that the taxes were assumed. Right. But it was also in the coke facility. First of all, in that case, if you review the record, Ellen Beamster, the manager of Calumet City Transfer, indicated that, in fact, he assumed the liabilities for the outstanding tax liens of $1.6 million and the mechanic's liens, which both showed up on the title policy, although he indicated he had not in fact paid them. Furthermore, review of the purchase agreement in that case, which is at the record at E45 in the coke facility case, under the assumption of liabilities, it indicates that the purchaser assumes liability for all claims arising from the ownership, use, possession, or condition of the real property. Not to get too metaphysical about this, but what is PTAB telling us when they say that assuming the back taxes is going to impact upon our determination as to whether or not you paid fair market value? Are they saying that we're going to exclude that from a determination of what fair market value should be for the property? No, what they're saying, Your Honor, is it's important to know whether or not that there were taxes on the property because your consideration for a purchase of real estate not only includes the cash that you pay as well as the assumption of any liabilities, including real estate taxes. Exactly. But I don't understand PTAB's position as to why the sale, the fair market value sale, the last one, should immediately come under suspicion because there were back taxes involved. I don't believe it's just that it's immediately under suspicion, Your Honor. Why would it ever be under suspicion? Because it was the burden of proof of the taxpayer to proceed. They did not come to PTAB showing all their proof. So what they're really saying, I think, is that the fair market value of the property for tax purposes should disregard any back taxes that were paid, which might have reduced the price of the property in the first place. And we're not going to take those into consideration. No, I don't believe they're saying that, Your Honor. What they're saying is that there's confusion between the appraisers. I don't think there's any confusion at all with respect to the people who were dealing across the board buying property. I think the confusion is in their minds as to how PTAB is going to treat the issue. That's their point. Their concern was that there were inaccuracies and that they were unsure of the sale. In fact, part of the problem that PTAB set forth in the language that Your Honor was looking for when you were talking to the Assistant Attorney General, I believe, is this language. We weren't talking to her. We were just asking the question. Well, asking the question. And you were trying to find the language where you wanted to know what PTAB said in relation to the bankruptcy and the arm's length sale. It said, although Richter found these sales to be arm's length, the inclusion of the circumstances of the sale would have bolstered his opinion of the arm's length nature. There was no evidence or testimony regarding the specifics of these sales. By not including the information, it clouds the appraiser's credibility and calls into question the arm's length nature of the sales. It doesn't specifically – Sounds like bureaucratese to me when you've got before you a clear record in writing of what actually went down. No, Your Honor, the – Why lay it all on the oral representation made by an expert witness when you have in front of you – when you have in front of you all of the records you really need to determine whether or not this was fair market value or not? What we need to look to here, Your Honor, is the fact that when these complaints were filed, all four of them, Calumet said that the basis of these complaints was a recent sale and a recent appraisal. And I would like to point out to the Court that there is a distinction between comparables and a recent appraisal, because a recent appraisal deals with an MAI giving an opinion of value as the property, not just comparables which were rejected, in fact, those submitted by the Board of Review. PTAB said, well, these are just comparables. There's no testimony. We're not going to accept it. But there's a complete distinction between the appraisals and comparables. And what PTAB noted in this case was nowhere – or the evidence in this case, Your Honor, will show that nowhere on any of those appeal forms did they indicate that this sale was subject to bankruptcy. And nowhere in the appraisals that were done by this MAI did it indicate that the subject sale was a bankruptcy nor the comparables. And that's a problem because when an appraiser prepares his report, he's supposed to give a property history, and in that property history he's supposed to indicate the grantor or grantee, the surrounding conditions of the sale. None of that's there. Furthermore, for the same thing with his comparables, all the comparables failed to show conditions of the sale. Two of those comparables, particularly, were bankruptcy sales, which the appraiser again chose not to indicate. The evidence of the intervener's appraiser indicates that you have to set forth the conditions of the sale. And that was one of the basis of PTAB's concern. Furthermore, it's the law that we consider the surrounding transaction and the relationship of the parties. Case law, in fact, indicates, Your Honor, that a sale is not conclusive evidence of value, as the taxpayer would like to report before this Court. And you know we've argued its ways. But what the law provides is that a sale is practically conclusive. But in any event... Whatever that means. And I take it you would argue that that means whatever PTAB decides it means. No, Your Honor, it means that. In any given case. They must look to see whether or not that sale is proper indicia of the fair market value. So then the case law says then you go past the sale and you look at the relationship of the parties and you look at the market. And that's what PTAB did here. Okay. They discounted plaintiff's evidence, reviewed the intervener's evidence, did not accept all of the intervener's evidence, but in reaching its decision, it took a comparable, some comparables from Mr. Richter's supplemental appraisal, and some comparables from intervener's appraisal to determine that that was their decision of market value. And our standard of review for that, as you are clearly saying, is a manifest way to the evidence. That is correct. What about their argument that there was a preliminary de novo issue here? And that preliminary issue, as I understand their argument, is whether or not it's a question of law as to how we should treat the most recent sale, whether it be bankruptcy or any other kind of sale. They seem to be arguing that the initial question is a question of law as to what PTAB is required to do with respect to the evidence of the most recent sale. Well, Your Honor, the problem with their position is that that is not the law. It is clear under the case of Louis... Well, maybe they're arguing that it should be. Well, unfortunately... If it should be the law, then I suppose it's de novo as well, right? Well, they're arguing... If it's a matter of law, PTAB would be required to accept the most recent sale as conclusive, be it in bankruptcy, auction, or any other way. They're arguing that that should be the law. But they have no support for that law, Your Honor. Well, sure they do. They've got a lot of support for it. Well, the case of Bloomington Public School District specifically says that a finding of fact that is deemed prima facie true and correct under this Court's review procedures is the PTAB's determination of whether a sale is arm's length. That is a determination of fact, not a matter of law. And the case is cited by... But what they're saying is that there's an initial determination that should be made, that if it's an arm's length sale and it's the most recent sale, that should really take off the table the question of whether or not it's conclusive or not. First of all, Your Honor, again, I have to... I know. You're going to cite me to that school case again. I know. Not only the school case, but every case that is cited, not one case states the proposition that Calumet is presenting at this Court, that a sale, once it is shown to be arm's length, is in fact conclusive evidence of the value. Okay. I do understand your point. And that's just not the law. If they would like to argue that, that's fine. But it's not what the President provides for in this State. You don't think they should be able to cite former PTAB decisions that haven't been raised before PTAB? No, Your Honor, for two reasons. One, a former PTAB decision is akin to a trial court decision. One trial court decision is not binding upon another trial court decision. Well, it's not binding, but that doesn't prohibit them from... And it's not binding upon this Court. But you're saying they shouldn't even be able to cite it on a PTAB... No, Your Honor, the reason being, one, they didn't raise this. PTAB is not a body of record. Those cases... What do you mean, it's not a body of record? As far as... they're not published decisions, Your Honor. If they wanted to bring them, they should have brought them to PTAB. Plus, again, the argument they're raising in those decisions is that it is conclusive evidence of value, the sale. That is not what they raised, argued from the very inception of this case. How they interpret it is one issue. Whether or not they can present it to us is the other issue. You're arguing that they shouldn't be allowed to even present it to us unless they first present it to them? Because, Your Honor, they did not raise that before the PTAB, and nor did they make the argument they're basing using those decisions. You're going to put all the appellate lawyers out of business. They can't go around and look for cases that are comparable to theirs because they weren't cited below. That's not the point, only, Your Honor. That's not the point. I thought that was the point you were making. Assuming the court then rejects the fact that they're allowed to cite those decisions, Your Honor, the point still goes that the argument they're raising was not made before PTAB. They never once argued before the PTAB that your prior decisions in these cases say that this is your procedure and you're bound by that. Not one place in the record of either of these cases will you find that argument made. Therefore, Your Honor, for all the reasons stated set forth in our brief and the arguments before the court, we request that this court affirm the decisions of the Property Tax Appeal Board in these matters denying relief to the taxpayer. Thank you. Thank you, counsel. Mr. Wynn, you have the last word. I can address the points that you raised. First of all, Your Honor, I was remiss in mentioning that before they went to hearing, a motion for summary judgment was filed on accepting the sales as conclusive evidence. That's right. We did file a motion for summary judgment. And therefore, when the hearing started, we already knew what the PTAB's view was going to be of that and there was other evidence. Your motion was for summary judgment was denied. That's correct, and the appraisals were not part of that motion. You knew that was going to happen, didn't you? Well, and I presume that's why Mr. Dillon went ahead and introduced that. Secondly, the cases you specified from PTAB, PTAB has pointed out when a sale was an arm's length by reciting the reasons why it was not an arm's length. And there was no evidence introduced here as to anything that happened in the bankruptcy proceedings about any of the parties in the bankruptcy proceedings that indicated a lack of arm's length put before PTAB as evidence. And that's why that sentence was about the circumstances. Well, how do you establish arm's length? They mentioned something about there was no evidence that the parties engaged in negotiations. I mean, you folks, you made an offer and it was accepted. In one case, it was accepted. In another case, the offer was made, an objection was raised by the creditors' committee, that a second offer had to be made. That's right. You're correct. I misspoke when I said it was in both cases. It was only in one. I think they also mentioned the lack of other potential buyers. I don't know how you would get that into evidence. We know in one case there were three bidders present and they didn't submit a bid in the record. One of them spoke to the creditors' committee and that caused the objection. That's all we know from the record. We also don't know, because nobody introduced it from the other side, whether in the second case where a letter with an offer was submitted and that was accepted, how many other letters may have been submitted to a real estate agent. We just don't know that. Now, we reversed the decision of PTAB and sent it back. Do you want us to do it strictly on the basis of your argument that it was a matter of an error of law for them to actually grant you summary judgment because you had presented the last sale as conclusive? We've argued also on the manuscript side of the evidence, so how you reverse, as long as what we ask for. We have to write the order or the opinion. You know, we're the ones that stuck with that part. But what we're asking for is for notice. Do you really believe that that's what we should do? I mean, give us a choice now. Which would you prefer? You want us to argue in the alternative that even if the Supreme Court doesn't accept our theory and your theory that this is a question of law initially, and they erred as a matter of law in not accepting the sale, the most recent sale, as the best evidence and conclusive evidence of fair market value. Even if the Supreme Court doesn't accept that, then they should take our second argument, which would be that their decision is against the manifest weight of the evidence, which would get us into the comparables and everything else. Is that the kind of opinion you want us to write? We don't believe we're asking you for an extension of the law. I mean, there is case law. You want us to use that Indiana case for starters, right? No, I don't, Your Honor. The Cook County Board of Review case 384.472, which says that when the determination of an appeal for PTAT turns on whether they input the proper valuation method, the question presented is one of law. And we know the hierarchy. If you have a good sale in front of you, you don't go to any other method of valuation, which means that determining if that's a good sale is a method of valuation, and that is a question of law. Now, are there questions as to did you establish that it was a good sale? We believe we did. And therefore, this should have been accepted as the good sale because there was no evidence introduced of a relationship between the parties that rendered it suspect. There was no evidence introduced of any proceedings, anything that happened in the bankruptcy court that made it suspect. And so it should have been accepted as a sale, as a matter of law. Okay. Now, as far as, and we think we're asking for no different treatment. We're asking it to be like any other sale in that if you determine that it was arm's length, it should be accepted whether it was in bankruptcy or not. And those facts were there. Especially, as you mentioned, this being hard economic times, perhaps we tend to make more of an inquiry about that, but there's not a reason to presume that sales should be rejected because they were in tough economic times or in bankruptcy. Thank you. Counselors, thank you all. The case was well briefed and well argued. It will be taken under advisement. We're going to take just a short recess.